**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
NEW FALLS CORPORATION,

               Plaintiff,

     v.

OM P. SONI,

               Defendant.
----------------------------------------------------------X

**<u>ORDER</u>**

16-CV-06805 (HG) (LGD)

**LEE G. DUNST**, Magistrate Judge:

       The parties' recent discovery-related filings in this long-running case bring to mind "the old French proverb . . . the more things change, the more they stay the same."[1] *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 271 (D.C. Cir. 2014). Since this action was filed more than six years ago, the parties have engaged in scorched earth litigation tactics—while routinely ignoring and flouting the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of New York, and orders of previously-assigned judges of this Court (prior to the reassignment of this case to the undersigned on June 13, 2022). As Spanish philosopher George Santayana aptly observed, "[t]hose who cannot remember the past are condemned to repeat it." *Volland-Golden v. City of Chicago*, No. 13-CV-1477, 2016 WL 4678299 at *6 (N.D. Ill. Sept. 7, 2016). Knowing the history of the parties' prior conduct in this case (and with now more than 200 separate docket entries), the Court has repeatedly made it clear to Plaintiff and Defendant (to the attorneys and directly to their respective clients) that it is way past time to complete discovery and "secure the just, speedy, and inexpensive determination" of this case. Fed. R. Civ. P. 1; *see, e.g.,* Transcript of Nov. 10, 2002 Conference, Electronic Case File Docket Number ("ECF No.") 199 at 7-8 (memorializing that the undersigned directly advised counsel and clients of their Rule 1 obligations).

---

[1] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

However, based on both parties' recent filings concerning their requests to conduct extensive non-party discovery, it is now abundantly clear to the Court that neither party has any real interest in altering their unruly litigation strategy or starting to comply with their Rule 1 obligation to achieve a "just, speedy, and inexpensive" resolution of this proceeding.  *See* ECF Nos. 200 & 203.  The Court has made plain to the parties in recent months that there is "a new regimen" for handling discovery in this case and that "there is a new sheriff in town—not Gary Cooper, but me." [2]  *Tadayon v. Greyhound Lines, Inc.,* No. 10-CV-1326, 2012 WL 2048257, at *6 (D.D.C. June 6, 2012); *see* ECF No. 199 at 8-9 (the Court advised the parties that "I am going to use everything in my toolbox to really work with the parties to get these cases moving" and noting that this case "has been stuck in the mud with a whole series of unnecessary and excessive discovery disputes, and we're going to start working through them").  As neither party has demonstrated a genuine interest in securing the "just, speedy, and inexpensive" resolution of the discovery issues in this case, the Court will do it for them.

## I.    FACTUAL BACKGROUND

The Court presumes familiarity with the facts underlying this case which are detailed in numerous prior orders by other judges previously assigned to this highly-contentious case.  *See, e.g.,* ECF Nos. 43 (District Judge Arthur D. Spatt), 48 (Magistrate Kathleen A. Tomlinson), 172 (District Judge Sandra J. Feuerstein).  As Judge Tomlinson explained, "[t]his is an action seeking the recovery of sums allegedly owed by Defendant Om P. Soni ('Defendant' or 'Soni') to Plaintiff New Falls Corporation ('Plaintiff') under a promissory note executed for business and commercial loans."  ECF No. 48 at 1; *see* ECF No. 153 at 1 ("Plaintiff seeks to recover the principal sum of $204,559.72, along with interest allegedly owed by Defendant").

---

[2] The 1952 movie "High Noon" was set in the old American West, starred actor Gary Cooper, and is included in The American Film Institute's list of "The 100 Greatest American Films of All Time." *AFI'S 100 YEARS...100 MOVIES — 10TH ANNIVERSARY EDITION*, AM. FILM INST., https://www.afi.com/afis-100-years-100-movies-10th-anniversary-edition/ (last visited Dec. 14, 2022).

## II.     PROCEDURAL POSTURE

The numerous docket entries over the past six years make clear that the conduct of both parties

has bedeviled previously-assigned judges.  Judge Tomlinson summarized it best in her May 29, 2020

decision:

> Despite the straightforward nature of the singular claim raised in this action, this case has dragged on for nearly four years, generating extensive motion practice. **While this motion practice is substantially attributable to the Defendant's and various non-parties' history of non-compliance with their discovery obligations, it also attributable to Plaintiff's repeated efforts to expand these discovery obligations beyond the scope of what is proportional to the needs of this case.** In addition, counsel for both parties have consistently filed motions without following the proper practices and procedures of the Federal Rules of Civil Procedure and the Local Rules of this District -- resulting in still further submissions which have interfered with the efficient resolution of Plaintiff's claims. As discussed below, the motions currently pending before the Court are no exception.

ECF No. 153 at 2 (emphasis added). As a result of the parties' abusive approach to discovery and

related motion practice, Judge Tomlinson imposed strict controls over these litigants.  For example, in

her May 29, 2020 decision, Judge Tomlinson ordered that "**[g]oing forward, the parties are**

**precluded from filing any further motions in this case without the advance permission of this**

**Court.**" *Id*. at 30 (emphasis in original).  And in her June 16, 2020 Order, Judge Tomlinson ordered as

follows:

> The Court notes the filing of DE 155 and 156, neither of which complies with the Court's May 29, 2020 Memorandum and Order [DE 153]. Therefore, DE 155 and 156 are stricken. Counsel have one week (June 23, 2020) to provide the Court individually with a **one-page bullet point list** solely containing the discovery which each side claims is still to be completed in this case. **The one-page submission shall not contain a party's "position," complaint about opposing counsel, argument, request for a ruling, disputed issue, commentary on claims or defenses or anything of a similar nature.** Any failure to comply with the letter of this Order shall result in the imposition of sanctions. Once the Court has reviewed the anticipated one-page submissions, it will determine next steps. No other filings are to be made until further Order of the Court."

June 16, 2020 Order (emphasis added).

Judge Tomlinson's aforementioned observations about both parties ring true today and have

required extensive Court involvement in managing discovery since this case was reassigned to the

undersigned six months ago.  *See, e.g.,* Sept. 20. 2020 Order; ECF No. 191 (Oct. 17, 2020 Order);

Nov. 7, 2022 Order; ECF No. 197 (Order of rulings at Nov. 10, 2022 conference); ECF No. 198 (Nov.

17, 2022 Order); Dec. 9, 2022 Order.   The Court presumes familiarity with its aforementioned

discovery-related orders in this case.  To summarize, the current posture is to address "discovery

which each side claims is still to be completed in this case."  June 16, 2020 Order;  *see, e.g.,* Sept. 20,

2022 Order (directing the parties to advise the Court "what additional discovery remains to be

conducted").  The Court addressed these requests during a lengthy in-person conference on November

10, 2022.  *See* ECF Nos. 197 & 199.

On November 10, 2022, the Court ordered that "[t]he parties shall not serve any new discovery

demands of any type on the other side or non-parties unless the Court first grants a request to serve

said discovery."  ECF No. 197 at 1.  Presently before the Court are the parties' latest requests for the

Court's approval to conduct discovery of various non-parties.  *See* ECF Nos. 200 & 203.  The Court

provided the parties with specific directions about what to address in these submissions regarding

proposed non-party discovery.  *See* ECF Nos. 197-99.  Additionally, the Court directed Plaintiff's

counsel to file a separate submission to address the Court's concerns about "the pattern of obfuscation

by Plaintiff's counsel in responding to direct and specific inquiries from the Court."  ECF No. 198 at

3-4 (Nov. 17, 2022 Order); ECF No. 203-4 (Plaintiff's counsel's response).

## III.   LEGAL STANDARD

In addressing the parties' pending requests to conduct additional non-party discovery, the

Court has "broad discretion to manage pre-trial discovery."  *Wood v. F.B.I.*, 432 F.3d 78, 84 (2d Cir.

2005); *see EM Ltd. v. Republic of Argentina, 695 F. 3d 201, 207* (2d Cir. 2012) ("[a] district court has

broad latitude to determine the scope of discovery and to manage the discovery process"), *aff'd sub

nom. Republic of Argentina v. NML Capital, Ltd.,* 134 S. Ct. 2250 (2014). Non-party discovery must

be "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and must not impose any "undue

burden or expense" on the non-party, Fed R. Civ. P. 45(d)(1). *See, e.g., Bhatt v. Lalit Patel Physician P.C.,* No. 18-CV-2063, 2020 WL 13048694 at *1-2 (E.D.N.Y. Oct. 19, 2020) ("[C]ourts assess whether a subpoena presents an undue burden by weigh[ing] the burden to the subpoenaed party against the value of the information to the serving party and by evaluating that information's relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." (internal quotations omitted)).  The Court need not wait for a motion to quash a non-party subpoena and has the authority to act *sua sponte. See Sheindlin v. Brady*, No. 21-CV-1124, 2021 WL 2075483 at *3 n.3 (S.D.N.Y. May 24, 2021) (discussing the court's authority to "issue a protective order on its own initiative to limit discovery if it is outside scope permitted by Rule 26(b)(1)"), *aff'd sub nom. Scheindlin v. Brady*, No. 21-CV-1124, 2021 WL 2689592 at *(S.D.N.Y. June 30, 2021); *see also Afua v. Mediterranean Shipping Company (USA) Inc.*, No. 22-CV-2111, 2022 WL 2181432 at *2 (E.D.N.Y. June 16, 2022) (recognizing "the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants" in addressing discovery issues).

Furthermore, the Supreme Court has recognized that the "district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin,* 579 U.S. 40, 45 (2016).  As a result, there are "many . . . standard procedural devices trial courts around the country use every day in service of Rule 1's paramount command: the just, speedy, and inexpensive resolution of disputes" even if not set forth explicitly in the Federal Rules of Civil Procedure.  *Id.*  Thus, it is appropriate for a court to exercise this inherent power if it is "a reasonable response to the problems and needs confronting the court's fair administration of justice."  *Id.*  Further, the Supreme Court has held that "district courts have the inherent authority to manage their dockets

and courtrooms with a view toward the efficient and expedient resolution of cases." *Id.; accord Braithwaite v. Collins,* No. 22-CV-0161, 2022 WL 426165, at *1 (E.D.N.Y. Feb. 11, 2022).  As the Court has made clear to the parties, it intends to use this authority to address discovery-related issues in this case.  *See, e.g.,* ECF No. 191 at 2-3; ECF No. 199 at 7-9.

## IV.     DISCUSSION

### A.     Defendant's Motion Seeking Permission to Serve Non-Party Subpoenas (ECF No. 200)

Defendant now seeks permission to serve several non-party subpoenas for documents and depositions.  As set forth below, this request demonstrates the continued actions by Defendant in defiance of Rule 1's mandate and the Court's very clear direction.

#### 1.     Document Subpoenas to The Cadle Co., Inc. and The Cadle Co. II, Inc.

Defendant contends that one of the potential defenses in this case relates to the "the propriety of Plaintiff's assignment, the true ownership of the debt is at issue and the Asset/Sale Agreement of September 3, 2015," and whether Plaintiff "is not the true owner of the debt."  ECF No. 200 at 1.  As such, Defendant seeks permission to serve non-party subpoenas on The Cadle Co., Inc. and The Cadle Co. II, Inc. (the "Cadle Entities") regarding responsive documents on these topics.  In support of this request, Defendant includes relevant excerpts from the Asset/Sale Agreement of September 3, 2015, including "Reporting to or from the Internal Revenue Service" (Section 8.2), "Notices" (Section 11), and "Assignment" (Section 14).  On August 10, 2020, District Judge Sandra J. Feuerstein ordered that "issues of signature, payments made, who benefited from the loan, and the propriety of the assignment" should be addressed in a future hearing in this case.  ECF No. 170.  The Court therefore agrees that *highly-targeted* non-party discovery to the Cadle Entities on these *limited* topics is reasonable under Rule 45.  However, Defendant's proposed language for the subpoenas to the Cadle Entities is wildly overbroad and unduly burdensome as it seeks a seemingly limitless range of documents over a seven-year time period and goes way beyond the relevant terms of the Asset/Sale

Agreement of September 3, 2015.  ECF No. 200 at 4-5; *see, e.g., Sheindlin*, 2021 WL 2075483, at *3 n.3.  The Court concludes that the proposed subpoena in its *current* form to the Cadle Entities is not "proportional to the needs of the case," Rule 26(b)(1), and would impose an  "undue burden or expense" on those non-parties, Rule 45(d)(1).  The Court therefore DENIES Defendant's request to serve the proposed subpoenas on the Cadle Entities in their *current* form.[3]

As Defendant is incapable or unwilling to scope out a reasonable subpoena to the Cadle Entities, the Court will do it.  Therefore, the Court GRANTS Defendant's request to serve document subpoenas on the Cadle Entities that seek production of *only* the following during the time period of September 13, 2015 to November 30, 2022: (1) all "Internal Revenue Service Forms and Information Returns" (if any exist) sent to or received from the Internal Revenue Service per Section 8.2 of the Asset/Sale Agreement of September 3, 2015; (2) "all notices or deliveries" (if any exist) per Section 11 of the Asset/Sale Agreement of September 3, 2015; and (3) the "prior written consent(s) of the Seller" (if any exist) regarding any assignment per Section 14 of the Asset/Sale Agreement of September 3, 2015.  Defendant shall serve the aforementioned subpoenas consistent with the Court's ruling on the Cadle Entities no later than January 13, 2023, and provide evidence on such service on ECF no later than January 20, 2023.

### 2.      Deposition Subpoenas To Daniel C. Cadle And William Shaulis

Defendant seeks permission to serve non-party subpoenas to conduct depositions of (a) Daniel C. Cadle, President of The Cadle Co. Inc., and (b) Wiliam Shaulis, Vice-President of The Cadle Co. II, Inc.  These depositions requests are premature at this time because Defendant does not yet have any responsive documents from the Cadle Entities suggesting whether such depositions are even warranted.  The Court DENIES WITHOUT PREJUDICE Defendant's request to serve deposition

---

[3] The Court previously provided Defendant with ample notice that it expected Defendant to craft proposed subpoenas to the Cadle Entities that complied with Rules 26(b)(1) and 45.  *See* ECF No. 198 at 1.

subpoenas on Mr. Cadle and Mr. Shaulis at this time, and Defendant may renew this request after receipt of responsive documents from the Cadle Entities.

3.     New Requests To Serve Subpoenas On At Least Seven Additional Non-Parties

Notwithstanding the clear orders of this Court going back to 2020, Defendant unilaterally has added *brand new* requests for permission to serve additional subpoenas for documents and depositions on *at least seven* more non-parties (referred to collectively as the "November 30, 2022 Requests")—specifically, seeking (a) documents from Bradley Arant Boult Cummings LLP (including Ginger Carroll Gray, Esq.), The Debt Exchange (including Kevin J. Kelley, Esq.), and Vlock & Associates, (b) depositions of Stephen Vlock, Esq. and Mr. Stephen Giordano, Esq., and (c) a purported reservation of rights to seek documents from "governmental entities (*e.g.*, IRS)" and a deposition of Mr. Wade Parker.  ECF No. 200 at 5.   This untimely request to serve these additional subpoenas (including the purported reservation of rights) IS DENIED WITH PREJUDICE.

Defendant has waived the right to seek the November 30, 2022 Requests by failing to raise them previously with the Court.  On June 16, 2020, Judge Tomlinson ordered the parties to "provide the Court individually with a one-page bullet point list solely containing the discovery which each side claims is still to be completed in this case."  June 16, 2020 Order.  On June 23, 2020, Defendant identified four bullet points as "[t]he following discovery [that] remains to be completed at this time"—and did *not* include any of the new items listed in the November 30, 2022 Requests.  *Compare* ECF No. 158 *with* ECF No. 200 at 5.  More recently, on September 20, 2022, the undersigned directed the parties to submit a joint status report "regarding the current status of discovery."  September 20, 2022 Order.  On September 27, 2022, the parties submitted their joint status report, and Defendant included the same four bullet points previously identified more than two years ago in ECF No. 158 and also purported to add several *new* open discovery items that were *not* included in ECF No. 158.  *Compare* ECF No. 190 *with* ECF No. 158; *see* ECF No. 191 at 4 (the Court's October 17, 2022 Order

8

directing Defendant to explain the aforementioned discrepancy).  Notably, Defendant's September 27, 2022 list of remaining discovery did *not* include any of the *new* items now listed in the November 30, 2022 Requests.  *Compare* ECF No. 190 *with* ECF No. 200.  Defendant has made several additional submissions at the Court's direction in recent months and also attended a lengthy in-person conference with the Court on November 10, 2022—and did not seek permission to raise *any* of the new items listed in the November 30, 2022 Requests. *Compare* ECF Nos. 193, 195, 197 and 199 *with* ECF No. 200.

Defendant now purports to seek untimely permission to conduct additional non-party discovery regarding the *new* items listed in the November 30, 2022 Requests in total disregard for the Court's prior orders.  As such, the November 30, 2022 Requests are denied.  *See, e.g., Wood*, 432 F.3d at 84 (recognizing that courts have "broad discretion to manage pre-trial discovery"); *Field v. Bayerische Motoren Werke Aktiengesellshaft* , No. 18-cv-2889, 2022 WL 905129, at *3 (E.D.N.Y. Mar. 28, 2022) (rejecting requested relief due to the parties' failure to comply with the district court's orders); *see generally Veliz v. Crown Lift Trucks*, 714 F. Supp. 49, 58 (E.D.N.Y. 1989) (noting that "the practice of throwing in the kitchen sink at times may be so abusive as to merit Rule 11 condemnation").

In any event, Defendant's proposal to serve a host of additional subpoenas on non-parties at this late stage of the discovery process is wildly inconsistent with the Rule 1 obligation to "secure the just, speedy, and inexpensive determination" of this case.  *See Dietz*, 579 U.S. at 45 (recognizing "Rule 1's paramount command" and that the "district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").  Moreover, the service of a raft of additional non-party subpoenas would result in further needless delay and certainly spawn another round of litigation.  For example, the proposed non-party subpoenas to attorneys, including

Plaintiff's counsel (Vlock & Associates, Mr. Stephen Vlock, and Mr. Stephen Giordano), would

certainly result in a tsunami of extensive motion practice regarding attorney-client privilege issues.

To quote Defendant's own words lodging accusations against Plaintiff, the additional non-party

subpoenas proposed by Defendant would have the obvious effect to "prolong the litigation in

perpetuity." ECF No. 200 at 2. In its submissions to the Court going back to 2020, Defendant keeps

"moving the goalposts" regarding the remaining discovery to be conducted in this case. *Kids' Town*

*at the Falls LLC v. City of Rexburg,* 570 F. Supp. 3d 911, 927 n.10 (D. Idaho 2021). The Court shall

not condone this endless fishing expedition and further delay tactics and thus DENIES WITH

PREJUDICE the request to serve November 30, 2022 Requests.

## B.     Plaintiff's Motion Seeking Permission To Serve Non-Party Subpoenas (ECF 203)

Plaintiff now seeks permission to serve several non-party subpoenas for documents and

depositions. As set forth below, this request demonstrates the continued actions by Plaintiff in

defiance of Rule 1's mandate and the Court's clear directions.

### 1.     Document Subpoena to Alan Grossman

Plaintiff seeks the Court's permission to serve a subpoena on non-party Alan Grossman, CPA,

for production of "Defendant's State and Federal Tax Returns, including all schedules, K-1's,

financial statements, information provided by the Defendant, worksheets, notes and/or correspondence

related thereto during the period January 1, 2006 to January 1, 2009." ECF No. 203 at 203.

This is not Plaintiff's "first time to the rodeo" when it comes to seeking Defendant's individual

tax records through the discovery process in this case. *Ford v. Gov't Emps. Ins. Co.,* No. 14-CV-180,

2015 WL 11109504 at *2 (N.D. Fla. Feb. 3, 2015). Plaintiff has engaged in extensive efforts for

several years, through discovery directed to Defendant and non-parties, to obtain Defendant's

individual tax returns. *See, e.g.,* ECF No. 153 at 16-18 (Judge Tomlinson's discussion of Plaintiff's

prior discovery efforts regarding these individual tax records); ECF No. 203 at 2 (Plaintiff's listing of

prior efforts to obtain these tax records directly from Defendant, non-party Kanwal Kapur, and non-party Internal Revenue Service).  **It is undisputed that Plaintiff has been successful in these efforts and possesses copies of Defendant's individual tax returns**.[4]  *See, e.g.,* ECF No. 153 at 16-18 (Judge Tomlinson's discussion of plaintiff's successful efforts to obtain Defendant's "individual tax returns," noting that "[t]he Court has already permitted Plaintiff to obtain the requested tax documents directly from Defendant Soni"); ECF No. 203 at 2 (Plaintiff's concession that non-party Kanwal Kapur "eventually produced copies of tax returns for the relevant time period"); ECF No. 205 (Plaintiff's confirmation that it is in possession of Defendant's individual tax returns).

More than three years ago, Plaintiff filed a motion to compel production of  "[c]onsent Agreements for Plaintiff to obtain **their Individual Tax Returns** [Defendant Om P. Soni and/or Anjali Soni] and the Tax Returns referable to all Trusts within which Om P. Soni and/or Anjali Soni have or had any interest in, including but not limited to the Om P. Soni Irrevocable Family Trust, **directly from any tax preparer**."  ECF No. 121 at 2 (emphases added).   On May 29, 2020, Judge Tomlinson denied Plaintiff's motion.  *See* ECF No. 153 at 16-18 (discussion about "Individual Tax Returns").  In so doing, Judge Tomlinson held as follows:

> The Court has already permitted Plaintiff to obtain the requested tax documents directly from Defendant Soni and non-party Anjali Soni as well as the IRS. Plaintiff has not made an adequate showing that some fraud or other impropriety exists with respect to the produced tax documents to warrant yet another mechanism for the receipt of the same documents. *See* Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency and extent of discovery … if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."). Accordingly, Plaintiff's motion to compel the production of executed "Consent Agreements for Plaintiff to obtain [Defendant Soni and non-party Anjali

---

[4] Defendant also represents to the Court that Plaintiff already has obtained copies of some of Defendant's tax records through a subpoena in a pending Nassau County Supreme Court proceeding. *See* ECF No. 201 at 2. (Plaintiff has received various documents, including "6. Om & Anjali Soni Amended 2006 Tax Returns . . . 11. Om & Anjali Soni 2010 Tax Returns; 12. Om & Anjali Soni 2016 Tax Returns; 13. Om & Anjali Soni 2018 Tax Returns; 14. Om & Anjali Soni 2019 Tax Returns; 15. Om & Anjali Soni 2020 Tax Returns"); ECF No. 204 (identifying the state court proceeding as *New Falls Corporation v. Soni Holdings, LLC,* Supreme Court, Nassau County, Index: 601304/2021).

Soni's] Individual Tax Returns...**directly from any tax preparer**" is DENIED.

*Id.* at 18-19 (emphasis added).  As detailed below, the Court now rejects Plaintiff's apparent request to reconsider Judge Tomlinson's prior decision denying Plaintiff's request to obtain additional individual tax records from other sources in this case.[5]  *See* Fed. R. Civ. P. 60(b) (providing relief from a judgment for, among other things, mistakes, inadvertence, excusable neglect, newly discovered evidence, fraud or any other reason justifying relief); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (a motion for reconsideration "is not a vehicle for relitigating old issues or otherwise taking a second bite at the apple"); *Gindi v. New York City Dep't of Educ.*, No. 15-CV-6475, 2017 WL 58833, at *1 (E.D.N.Y. Jan. 5, 2017) ("Reconsideration under Rule 60(b) 'allows extraordinary judicial relief' and it should be 'invoked only upon a showing of exceptional circumstances.'" (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986))).

Plaintiff's latest attempt to secure court permission to obtain additional copies of these tax records from additional sources "is reminiscent of *Moby Dick,* where Herman Mellville describes Captain Ahab's self-destructive obsession to destroy a whale that had injured him in the past." *In re Experient Corp.,* 535 B.R. 386, 388 (Bankr. D. Colo. 2015).  In a last-ditch effort to get around Judge Tomlinson's well-reasoned decision, Plaintiff argues that some tax documents may not have been produced by Mr. Kapur because he "was not the Defendant's accountant for 2006, 2007 and 2008" and, in fact, Mr. Grossman "was allegedly Defendant's accountant" for those years.  ECF No. 203 at 2.  In support of this theory, Plaintiff cites to a December 1, 2021 United States Tax Court decision (issued after Judge Tomlinson's prior decision) and claims that **"[t]he said Decision identified Alan**

---

[5] In its recent efforts to once again obtain the Court's permission to pursue non-party subpoenas for Defendant's individual tax returns, Plaintiff fails to acknowledge the precedential impact of Judge Tomlinson's May 29, 2020, decision let alone address the high legal standard to warrant reconsideration of that well-reasoned decision.  Plaintiff argues that Judge Tomlinson's decision denying the request for a consent agreement to obtain tax records from any tax preparer "is not the same as the individual tax returns."  ECF No. 203 at 2.  Plaintiff is grossly misreading Judge Tomlinson's clear decision and creating a distinction without any meaning.

**Grossman, CPA, throughout as Defendant's representative and accountant**."  ECF No. 203 at 2-3 (emphasis added); *see Soni v. Comm'r of Internal Revenue*, 122 T.C.M. (CCH) 358, 2021 WL 5630890 (T.C. 2021), *pending appeal* (Second Circuit April 15, 2022).  Relying on the aforementioned Tax Court Decision, Plaintiff now represents to the Court that "**Alan Grossman, CPA, was the accountant for the Defendant, Om P. Soni,** and his various entities for several years relevant to this action and prior to the time Kanwal Kapur was the accountant."  ECF No. 203 at 4 (emphasis added).  **Plaintiff's claim is incorrect.**

Plaintiff misstates and distorts the actual findings of the Tax Court in arguing that Mr. Grossman "was the accountant for the Defendant, Om P. Soni."  According to the Tax Court Decision, the Defendant's "tax returns were prepared by an outside accounting firm" – **but not Mr. Grossman**.  *Soni*, 2021 WL 5630890 at *7.  In a discussion about "Tax Return Preparation," the Tax Court stated that "**Ralph Crisci from Ives & Sultan prepared the return.**"  *Id.* at *8 (emphasis added); *see* id. at *14 ("Mr. Crisci, [Defendant] Om's outside tax preparer").  In a discussion about "[t]he Sonis' Authorized Representative, the Tax Court identified Mr. Grossman as 'the Sonis' representative' and that he had "assisted with income tax and employment tax matters for [Defendant] Om and his businesses."  *Id.* at *9; *see id.* at *11 ("IRS records listed Mr. Grossman as the Soni's representative"); *id.* at *40  ("[t]he Sonis worked with Mr. Grossman to provide what information they could to Mr. Crisci").  Thus, the Tax Court decision in fact draws a distinction between Mr. Crisci as Defendant's accountant and Mr. Grossman as Defendant's representative.

In the pending Second Circuit appeal, the Department of Justice confirms that Mr. Crisci served as Defendant's accountant for Defendant's individual tax returns.  *See* Answering Brief for the Appellee, *Om P. SONI and Anjali Soni, Petitioners-Appellants, v. COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.,* No. 22-829, 2022 WL 17413989 at *9 (2d Cir. Nov. 28, 2022) ("Taxpayers' personal income tax return for 2004 was prepared by Ralph Crisci, a partner at the

accounting firm Ives & Sultan.").  By contrast, the Department of Justice explains that Mr. Grossman

served in other roles—but apparently not as an accountant for Defendant's individual tax returns.

*See id.* at *9 ("Beauville [Corporation]'s accountant was a CPA named Alan Grossman"), *14

("Grossman was Beauville's authorized representative"), *17 (discussion of the Tax Court ruling that

Grossman served as Defendant's "representative").  In his Second Circuit appeal, Defendant agreed

that his tax return for 2004 "was prepared by accountants at Ives & Sultan, specifically by Mr. Ralph

Crisci of that firm."  Brief and Special Appendix for Petitioners-Appellants, *Om P. SONI and Anjali

Soni, Petitioners-Appellants, v. COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.*,

No. 22-829, 2022 WL 4016131 at *4 (2d Cir. Aug. 29, 2022).  While Defendant contests the Tax

Court's finding whether Mr. Grossman served as his representative, Defendant agrees with the Tax

Court and Department of Justice that Mr. Grossman was an accountant at Beauville and worked on the

Beauville audit—and not on Defendant's individual tax returns.  *Id.* at *5.  According to Defendant,

"Mr. Grossman was not an accountant for Petitioners [including Defendant], but for the company in

which they claimed losses for an investment, those losses being the subject of the IRS

assessments."  *Id.* at 15; *see also id.* at 22 ("accountant Alan Grossman, who had acted as accountant

not for Petitioners [including Defendant] but for Beauville").

     Based on the Court's reading of the Tax Court Decision and the pending briefs to the Second

Circuit, the Court concludes that Plaintiff is wrong now in claiming that there has been a court finding

that Mr. Grossman was Defendant's personal accountant for the years relevant to this action.[6]  As

such, Plaintiff has no good faith basis to now argue that there is "newly discovered evidence" or any

other reason to warrant disturbing Judge Tomlinson's prior denial of the continuing efforts to obtain

additional copies Defendant's individual tax returns for other sources.  Moreover, the Court is

---

[6] Plaintiff's counsel's distortion of the findings of the Tax Court Decision is part of a continuing pattern of "obfuscation and lack of candor" that has been the subject of a prior order of this Court.  ECF No. 198 at 3-4.

exercising its discretion to end Plaintiff's multi-year search for additional copies of Defendant's individual tax returns. *See Dietz*, 579 U.S. at 45; *Wood*, 432 F.3d at 84; *Afua*, 2022 WL 2181432 at *2; *see also* Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency and extent of discovery … if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

The Court therefore DENIES Plaintiff's request to reconsider Judge Tomlinson's May 29, 2020 decision and DENIES WITH PREJUDICE Plaintiff's request to serve its proposed subpoena on Mr. Grossman seeking documents regarding Defendant's individual tax returns.[7]

### 2.   Deposition Subpoena to Alan Grossman

Defendant seeks permission to serve a non-party subpoena to conduct the deposition of Alan Grossman.  For the reasons set forth above, the Court DENIES WITHOUT PREJUDICE this request.  However, Plaintiff may renew this request upon completion of the deposition of non-party Kanwal Kapur (currently scheduled for December 20, 2022).  ECF No. 203-1.  Any future motion to seek permission to conduct the deposition of Alan Grossman shall be limited to two pages, must supported by a sworn attorney affidavit (limited to three pages), and must be filed no later than January 13, 2023.

### 3.   Document Subpoena to Soni Capital Resources, LLC

Plaintiff seeks the Court's permission to serve a subpoena on non-party Soni Capital Resources, LLC ("Soni Capital") seeking production of twenty-two categories of documents over sixteen years, from 2006 to the present.  ECF No. 203 at 5 (citing ECF No. 192, Ex. C).

This proposed subpoena is on its face wildly overbroad in terms of both scope and time period.

---

[7] Plaintiff's proposed document subpoena to Mr. Grossman is not limited to Defendant's individual tax returns and, in fact, goes way beyond that and seeks "information provided by the Defendant, worksheets, notes and/or correspondence." ECF No. 203 at 203. Thus, in proposing this overbroad subpoena, Plaintiff ignores the Court's prior direction that the proposed subpoena comply with Rules 26(b)(1) and Fed R. Civ. P. 45(d)(1). ECF Nos. 191 at 3, 197 at 2, 198 at 1.

There are numerous examples of how this proposed subpoena is facially invalid, cumulative, and unduly burdensome.  For example, Plaintiff asks for documents that it already has in its possession, as the proposed subpoena to Soni Capital includes a request for Defendant's individual tax returns going back to 2006.  ECF No. 192, Ex. C (paragraph 14).  Similarly, in an unfettered request for seemingly every scrap of paper, Plaintiff asks for all bank records for all accounts in which Defendant has had any interest for a sixteen-year period—"including but not limited to monthly account statements, checks (from and back) and deposits slips."  ECF No. 192, Ex. C ¶ 1.  In yet another request, Plaintiff seeks—without any time limit—"certificates of title or other evidence of ownership" of any vehicles (including for a "go-kart") "owned, by in possession of, or used by Defendant." ECF No. 192, Ex. C ¶ 7.  While citing only a few examples above, the Court concludes that the overall proposed subpoena to Soni Capital in its totality violates both Rule 26(b)(1) and Rule 45(d)(1). *See, e.g., In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.),* 581 F. Supp. 3d 509,  (S.D.N.Y. 2022) (discussing the Court's authority to quash a subpoena that is "over-broad, duplicative, or unduly burdensome"); *Ford,* 2015 WL 11109504 at *2 (rejecting effort to seek "expansive discovery" of non-party because there was "no effort to tailor its subpoena"); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (concluding that a subpoena is "overbroad on its face" and concluding that "plaintiffs' counsel have run this risk and lost" by drafting it in that manner); *see also Veliz* 714 F. Supp. at 58 (noting that "the practice of throwing in the kitchen sink at times may be so abusive as to merit Rule 11 condemnation").

Moreover, Plaintiff has been on notice for several months about the Court's expectation that the proposed subpoena to Soni Capital would comply with Rules 26(b)(1) and 45(d).  However, Plaintiff has chosen to make no effort to narrow the scope or time period of the proposed subpoena to Soni Capital—despite the Court providing Plaintiff with multiple opportunities to do so.  On September 26, 2022, Plaintiff advised the Court that "remaining discovery" included a proposed non-

party subpoena for documents from Soni Capital.  ECF No. 190 at 3.  In response, the Court ordered

that Plaintiff identify by October 28, 2022 "[a]ll document requests that Plaintiff intends to include in

the proposed subpoena to non-party Soni Capital Resources, LLC. The Court expects that the

proposed subpoena will be 'proportional to the needs of the case,' Fed. R. Civ. P. 26(b)(1), and will

not impose any 'undue burden or expense; on the non-party, Fed R. Civ. P. 45(d)(1)."  ECF No. 191 at

4.  Plaintiff then submitted the aforementioned proposed subpoena to Soni Capital.  ECF No. 192, Ex.

C.  The Court addressed this request (and many others) during the November 10, 2022 status

conference and denied without prejudice Plaintiff's request to serve the proposed subpoena on Soni

Capital, noting that it seeks documents over "a sixteen-year time period" and "identified 22 separate

categories, and many of those categories using phrases like 'all documents, all document and things'"

– yet still granted Plaintiff another opportunity to submit new proposed language for the non-party

subpoena to Soni Capital by November 30, 2022.  ECF. No. 199 at 12; *see* ECF No. 197 at 2.

Subsequently, the Court provided Plaintiff with additional guidance about scoping the new proposed

subpoena to Soni Capital, advising that "[e]ach party shall set forth their respective rationale for why

the Court should not *sua sponte* reject said party's proposed non-party subpoenas for failing to comply

with both Fed. R. Civ. P. 26(b)(1) and 45 . . . ."  ECF No. 198 at 1.  However, Plaintiff chose to ignore

the Court's direction and instead resubmitted the exact same proposed subpoena that the Court

previously rejected on November 10, 2022.

It is clear to the Court that "[w]hat we've got here is failure to communicate." *Spoerer v.

Kroger Specialty Pharmacy, LLC*, No. 19-CV-1216, 2020 WL 1451711 (M.D. Fla. Mar. 25, 2020);

*see AFI's 100 YEARS...100 MOVIE QUOTES*, Am. Film Inst., https://www.afi.com/afis-100-years-

100-movie-quotes/ (last visited Dec. 14, 2022) (quote from the 1967 film *Cool Hand Luke*).   Given

Plaintiff's refusal to heed several orders to limit the scope and time period of its proposed subpoena to

Soni Capital, the Court "does not intend to give Plaintiff yet another bite at the apple" on this issue.

*IME Watchdog, Inc. v. Gelardi,* No. 22-CV-1032, 2022 WL 2316137 at *4 n. 8 (E.D.N.Y. June 28, 2022); see *Bhatt,* 2020 WL 13048694 at *3 ("As they stand, the plaintiffs' requests are grossly overbroad, and I decline to rewrite them.").  For the reasons set forth above, the Court stands by its prior decision to reject this proposed subpoena. *See Dietz*, 579 U.S. at 45; *Wood,* 432 F.3d at 84; *Afua*, 2022 WL 2181432 at *2; *see also Bhatt,* 2020 WL 13048694 at *2 ("[I]t should be kept in mind that it perfectly is possible for a subpoena duces tecum to impose an undue burden, or be subject to a protective order, even though it seeks relevant evidence. In all controverted cases it is up to the court to strike a delicate balance among the degree of relevance of the requested materials, the severity of the burden on the subpoenaed person or entity, and the utility of the protective mechanisms provided by the Federal Rules").

The Court therefore DENIES WITH PREJUDICE Plaintiff's request to serve its proposed subpoena on Soni Capital.

### 4.    Deposition Subpoena To Soni Capital Resources, LLC

Plaintiff further seeks permission to serve a subpoena for the deposition of a Soni Capital representative.  ECF No. 197 at 2 (citing ECF No. 190 at 2).  However, Plaintiff has not identified the name of the proposed non-party deponent affiliated with Soni Capital.   The Court therefore ORDERS Plaintiff to provide the Court no later than January 13, 2023 with the name of the proposed Soni Capital witness who it seeks to depose in this case and, at that time, the Court will issue an order regarding this request.

### C.    Obfuscation And Lack Of Candor By Plaintiff's Counsel

On November 17, 2022, the Court ordered Plaintiff's counsel to address the following in his latest submission:

> As officers of the court, all attorneys conducting discovery owe the court a heightened duty of candor." *Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 286-87 (E.D.N.Y. 2009); accord *Jianjun Chen v. 2425 Broadway Chao Rest.*, LLC, 331 F.R.D. 568, 571 (S.D.N.Y. 2019); *Kosher Sports, Inc. v. Queens Ballpark Co.*, LLC, No. 10-CV-2618

18

JBW, 2011 WL 3471508 at *7 (E.D.N.Y. Aug. 5, 2011). **In recent weeks, there has been a pattern of obfuscation by Plaintiff's counsel in responding to direct and specific inquiries from the Court.** First, in DE 190, Plaintiff's counsel represented to the Court that "Mr. Mead discussed his additional demands during the status conference on August 10, 2020 before Judge Feuerstein, but the Court did not grant his requests," while Defendant's counsel argued that "[c]ontrary to Plaintiff's position, the District Judge did not address and rule in any manner on defendant's remaining discovery and Mr. Giordano presents no proof of the same (i.e., order, transcript, etc.)." As a result of this dispute, the Court ordered both counsel to submit sworn affidavits supporting their respective claims about what transpired at the August 10, 2020 conference with Judge Feuerstein. See DE 191. While Defendant's counsel provided the Court with such an affidavit, Plaintiff's counsel failed to provide any affidavit to support his prior representations about the 2020 conference with Judge Feuerstein. Compare DE 192 with DE 193. Second, the Court ordered the parties to advise the Court "how much time remains within the seven hour limit for the depositions of Peter Barta . . .and Kanwal Kapur (excluding any formal on-the-record breaks and/or any calls to the Court during those depositions)." November 7, 2022 Order. In DE 196, Plaintiff's counsel answered this question about the Kapur deposition, but represented to the Court that it was "impossible to determine the length of the [Barta] deposition." By contrast, Defendant's counsel and Barta's attorney[8] each advised the Court that the Barta deposition lasted approximately 45 minutes. DE 195. At the November 10, 2022 conference, Plaintiff's counsel again claimed that he did not know how long the Barta deposition lasted before he ultimately conceded, only after direct questioning by the Court, that he would estimate that the Barta deposition lasted approximately 45 minutes. See FTR Log # 1:14-2:41. **Failure to make fulsome representations to the Court is unacceptable and will not be tolerated. Counsel are on notice that any continued obfuscation and lack of candor may result in imposition of sanctions by the Court.**

ECF No. 198 at 3-4 (emphasis added).  Plaintiff's counsel submitted the required letter in response to the Court's aforementioned order and continues to represent that his prior statements to the Court on the two topics above were "forthright, accurate and honest."  ECF No. 203-4 at 2.  The Court disagrees.

      1.   <u>August 10, 2020 Status Conference with Judge Feuerstein</u>

On August 10, 2020, Judge Feuerstein held a status conference attended by current counsel for both Plaintiff and Defendant.  ECF No. 170.   In response to the Court's September 20, 2022 Order that the parties identify "what additional discovery remains to be conducted and whether there are any

---

[8] As Plaintiff correctly points out in his recent filing, the Court's prior reference to "Barta's attorney" is a typographical error.  ECF No. 203-4.

anticipated discovery disputes that will require resolution by the Court," the parties submitted a joint

status report on September 27, 2022.  ECF No. 190.  In his portion of the letter, Plaintiff's counsel

represented that **"[n]otably, Mr. Mead discussed his additional demands during the status**

**conference on August 10, 2020 before Judge Feuerstein, but the Court did not grant his**

**requests."**  *Id.* at 3 (emphasis added).  Later on in the same joint letter, Defense counsel countered

that "[c]ontrary to Plaintiff's position, the District Judge did not address and rule in any manner on

defendant's remaining discovery and Mr. Giordano presents no proof of the same (i.e., order,

transcript, etc.)."  *Id.* at 4 n.2.

      In light of this dispute about what transpired at the August 10, 2020 teleconference, the Court

issued the following order on October 17, 2022:

> The minute entry for the parties' August 10, 2020 conference with Judge Feuerstein does
> not indicate any rulings on the instant discovery issues. See ECF No. 170. To the extent
> that the parties have a position on this point, counsel must submit a sworn affidavit with
> their respective Letters that (i) explains whether Judge Feuerstein did (or did not) address
> during the August 10, 2020 conference any of the Defendant's additional discovery
> demands, and (ii) provides any supporting evidence.

ECF No. 191 at 3.  On October 28, 2022, Defense counsel submitted a sworn declaration stating as

follows:

> 2. That I have reviewed my files for this action in an effort to determine if the late Judge
> Feuerstein had on August 10, 2020 addressed or ruled on any of the discovery issues
> which are delineated in Dkt. 191, and I have found no records indicating that Judge
> Feuerstein made any ruling on or addressed the aforesaid discovery issues in Dkt. 191 nor
> do I have any recollection of Judge Feuerstein making any rulings or addressing the
> discovery issues in Dkt. 191.
>
> 3. The docket and my records indicate that Judge Feuerstein ordered the hearings
> reflected in Dkt. 170 on August 10, 2020, and later on March 24, 2021 at Dkt. 181
> granted Defendant's motion at Dkt. 163. However, I have reviewed the Court's docket
> any my files and I have not found any record indicating that Judge Feuerstein on August
> 10, 2020 made any rulings or addressed the discovery issues in Dkt. 191.

ECF No. 193-1.  **By contrast, Plaintiff's counsel chose to file no such affidavit to support of his**

**prior representation to the Court that Judge Feuerstein previously ruled upon these discovery**

**issues.**  ECF No. 192.

The Court discussed this issue at the outset of the November 10, 2022 conference before

addressing the pending discovery issues:

> The first issue before me relates to what happened or didn't happen at the August 10th,
> 2020 conference with Judge Feuerstein, the district court judge to whom this case was
> previously assigned, who unfortunately passed away in an unfortunate personal injury car
> accident. **Both attorneys have differing views as to what occurred at that conference.**
> Unfortunately, due to the pandemic, there's no audio recording of that proceeding. **I
> asked the attorneys to submit to me sworn affidavits about what occurred and what
> did not occur. Based upon what's been submitted to me by defense counsel, it
> indicated that there were no such rulings. Mr. Giordano, you conceded that you
> don't have an affidavit to support that.** So absent any evidence before me, I'm
> assuming that none of these discovery disputes were previously resolved by Judge
> Feuerstein.

ECF No. 199 at 9-10 (emphasis added).  The Court later ordered Plaintiff's counsel to provide an

explanation for his failure to submit an affidavit to support his prior representations to the Court.  ECF

No. 198 at 11.

In response, Plaintiff's counsel contends that he "did not 'fail' to submit a sworn affidavit"

and, "[t]o the contrary, Plaintiff was given the choice whether or not to submit an affidavit."  ECF No.

203-4.  Plaintiff's counsel argues that the Court's prior order "made the submission of a sworn

affidavit contingent on whether or not the parties had a position on the Court's statement of a lack of

ruling," and **"Plaintiff did not have a position and chose not to submit a sworn affidavit**."  *Id*.

Plaintiff's counsel denied that this was "obfuscation or a lack of candor" and concludes that "[t]o the

contrary, **our lack of position indicates that the Court's statement that there were no rulings was

correct on its face,** and neither Plaintiff nor its counsel set forth anything controverting the same."

Id. at 1-2 (emphasis added).

The Court remains unconvinced by Plaintiff's counsel's latest gymnastics on this subject.  It is

undisputed that Plaintiff's counsel previously represented to the Court that Defense counsel allegedly

raised these discovery issues with Judge Feuerstein on August 10, 2020 "**but the Court did not grant**

**his requests.**" ECF No. 190 at 3.  But only after the undersigned sought to resolve this dispute with sworn attorney affidavits, Plaintiff's counsel backed off his prior representation to the Court, "chose not to submit a sworn affidavit," and concedes that "there were no rulings."  ECF No. 203-4 at 1-2. When provided with the opportunity "to put his money where his mouth is," Plaintiff's counsel chose not to do so.  *See Put One's Money Where One's Mouth Is*, MERRIAM-WEBSTER, https://www. merriam-webster.com/dictionary/put%20one's%20money%20where%20one's%20mouth%20is (last visited Dec. 14, 2022).

The Court stands by its prior finding regarding the conduct of Plaintiff's counsel on this subject and its prior warning to Plaintiff's counsel that any continued obfuscation and lack of candor may result in imposition of sanctions by the Court.

### 2.   Length Of The Peter Barta Deposition

In submissions to the Court, the parties advised the Court that there was a dispute about the November 21, 2018 deposition of Peter Barta.  ECF No. 190.  On November 7, 2022, the Court ordered Plaintiff and Defendant to advise the Court "how much time remains within the seven hour limit for the deposition[] of Peter Barta . . . (excluding any formal on-the-record breaks and/or any calls to the Court . . .)."  Nov. 7, 2022 Order.  Defense counsel responded as follows:

> [T]he undersigned has reviewed the transcript of the deposition of Mr. Peter Barta and contacted Defendant's prior attorney, Mr. Robert Bean, Esq. who conducted the deposition and requested that he review his notes from the deposition. Based on the response from Mr. Bean, the undersigned has been informed that **the Barta deposition was a total of approximately 45 minutes**, which would leave 6 hours and 15 minutes. This appears consistent with the Barta transcript from my review.

ECF No. 195 (emphasis added).  By contrast, Plaintiff's counsel provided a different response to the Court's inquiry:

> The deposition transcript of Plaintiff New Falls Corporation, by Pete Barta, states that the deposition was commenced at 12:57 p.m. and concluded at 12:11 p.m. **This makes it impossible to determine the length of the deposition.** Notwithstanding, the deposition was fully concluded and defense counsel, Robert Bean, Esq., stated that he had "No further questions," so there is no time remaining.

ECF No. 196 at 2 (emphasis added).

The Court addressed this topic during the November 10, 2022 conference.  The Court ordered that the 2018 Barta deposition be reopened for an additional two hours of questioning by Defense counsel.  ECF No. 197 at 2; ECF No. 199 at 23-24.  Later on during the conference, Plaintiff's counsel chose to revisit this subject and engage in the exchange below with the Court regarding the length of the 2018 Barta deposition:

> MR. GIORDANO: The other thing I actually wanted to speak about was your ruling regarding the redeposition of the plaintiff by Pete Barta. Your Honor has ruled that they can have a second deposition for two hours. However, there has been no motion for a second deposition submitted by the defendant. I know your Honor wants to streamline things –
>
> THE COURT: I'm ordering it sua sponte, all right, because what Mr. Mead has asked for is a seven hour deposition pursuant to the 2019 subpoena. I've made it clear I'm not giving him seven hours and I'm not giving him seven hours pursuant to the 2019 deposition. I'm exercising my discretion to reopen the deposition pursuant to the 2018 subpoena for two hours.
>
> MR. GIORDANO: I understand that, your Honor. However, he has to carry a specific burden to demonstrate that the second deposition of the plaintiff would not be cumulative, would not be harassing.
>
> **THE COURT: How long was the deposition of Mr. Barta?**
>
> **MR. GIORDANO: I don't know specifically, I wasn't there.** Mr. Barta is on the phone.
>
> **THE COURT:** Excuse me, Mr. Giordano. Please don't tell me you don't know how long the deposition was because I've seen -- you sent me time entries for how long the deposition was. **It was 45 minutes, wasn't it?**
>
> **MR. GIORDANO: No, the time entries I explained were not clear because it said that the deposition ended at 12:11 p.m. and started at 12:50 - something.**
>
> **THE COURT: How many pages was the transcript?**
>
> **MR. GIORDANO: It was about 30 pages, your Honor, in the transcript.** However, I've asked Mr. Barta himself, I've asked Steven Vlock, who appeared for it. They were unclear as to when -- how long it took. They didn't remember. This is going back four years ago.

THE COURT: How long -- how long have you practiced law?

MR. GIORDANO: I've been at this firm for 20 years and I worked for another firm for two before that.

THE COURT: Do you have a reasonable estimate -- if I have a transcript of a deposition that's 30 –

MR. GIORDANO: I could reasonably estimate.

**THE COURT: Let me finish, Mr. Giordano. If I have a transcript of a deposition that's 30 pages long, can you give me a rough estimate of how long you think that might have been?**

**MR. GIORDANO: I could reasonably estimate that it could be anywhere from 45 minutes to an hour.**

THE COURT: Well, I'm standing by my ruling that I'm permitting the deposition of Mr. Barta pursuant to the 2018 subpoena to be reopened for two hours.

ECF No. 199 at 31-33 (emphasis added).

The Court later ordered Plaintiff's counsel to provide an explanation for his representations to the Court regarding the length of the 2018 Barta deposition. ECF No. 198 at 11. In an extraordinary response, Plaintiff's counsel continues to stand by his untenable position that "the deposition transcript made it impossible to determine exactly how long the deposition took because it states that the deposition was commenced at 12:57 p.m. and concluded at 12:11 p.m. Thus, according to the transcript, it ended **before** it started." ECF No. 203-4 at 2. Plaintiff's counsel continues to argue that "it would have been pure speculation to answer how long the deposition lasted." *Id.* As to the November 10, 2022 conference, Plaintiff engages in revisionist history as to what occurred, claiming "**the Court asked a hypothetical question that, if there was a deposition transcript, which was approximately 30 pages,** how long I would estimate such a deposition would have lasted. **I estimated that it could be anywhere from 45 minutes to an hour.** FTR Log @ 1:14- 2:41. This was complete honesty without a hint of obfuscation." ECF No. 203-4. In crafting this response, of

course, Plaintiff is wrong that this was "a hypothetical question" because Plaintiff's counsel previously had represented to the Court that the Barta deposition transcript "**was about 30 pages**." ECF No. 199 at 32 (emphasis added).

On December 9, 2022, the Court ordered Plaintiff's counsel to provide the Court with the complete transcript of the Barta deposition, and Plaintiff's counsel did so.  ECF No. 205-2.  In light of the prior representations from Plaintiff's counsel, the Court was surprised to discover that the 29-page transcript is broken down as follows: pages 1-3 (Cover pages, Appearances and Transcript Index), pages 4-18 (Examination of Peter Barta), pages 19-29 (signature page, reporter's certificate, errata sheet, index and court reporter certificate and disclosure statement).  ECF No. 205-3.  Therefore, **the Barta deposition transcript in fact only contains 14 pages of actual testimony by the witness.** ECF No. 205-3 at 4-18.

The record is clear that Plaintiff's counsel has been "too cute by half" in claiming that it is "impossible" to answer the Court's simple and straight-forward question about the length of time of the Barta deposition. *VeroBlue Farms USA Inc. v. Canaccord Genuity LLC,* No. 20-CV-4394, 2021 WL 3913555, *19 (S.D.N.Y. Sept. 1, 2021) (notwithstanding "what the Court considers to be concerning conduct" and actions that "again toe the line between exuberant litigation tactics and bad faith conduct," the court declined to impose sanctions).

The Court stands by its prior finding regarding the conduct by Plaintiff's counsel on this subject and its prior warning to Plaintiff's counsel that any continued obfuscation and lack of candor may result in imposition of sanctions by the Court.

## D.   Discourteous And Unprofessional Conduct By All Counsel

The Court previously observed that "the parties' submissions to the Court have been replete with *ad hominem* attacks, vituperative language, and provocative finger-pointing" and advised that "[b]oth parties are on notice that the Court will not tolerate any further unprofessional conduct in this

case." ECF No. 191 at 5-6 (citing *Piccolo v. Top Shelf Prods., Inc.*, No. 16-6930, 2018 WL 4374914, at *1-2 (E.D.N.Y. Sept. 13, 2018) (imposing sanctions after "repeated instances of unprofessional conduct by both counsel" and "*ad hominem* attacks between counsel")). Unfortunately, both counsel have continued engage in needless finger-pointing and "more of the same 'I am rubber, you are glue' litigation strategy." *Venture Grp. Enterprises, Inc. v. Vonage Bus. Inc.,* No. 20-CV-4095, 2022 WL 4814830 at *1 (S.D.N.Y. Sept. 30, 2022).

For example, in pursuit of expansive non-party discovery, Defense counsel accuses Plaintiff and Plaintiff's counsel of having an improper financial motivation to "prolong the litigation in perpetuity in order to build up false or unnecessary collection costs or attorney's fees in the hope of trebling and a RICO lottery (with the Newark property at the end of the rainbow)." ECF No. 200 at 2. These gratuitous comments are unnecessary in addressing the discovery issues before the Court.

Plaintiff's counsel too cannot resist needless finger pointing at his opponent. For example, in attempting to address the Court's concerns about his obfuscation and lack of candor, Plaintiff's counsel pointed the proverbial finger at Defense counsel's statements to the Court and complained that "there was no admonishment for his false claims." ECF No. 203-4 at 1. Again, as noted previously, this type of behavior does nothing to move this case forward; in fact, it does the opposite.

The Court once again reminds the parties of their obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of New York, and the prior orders of this Court and that the Court will utilize all tools at its disposal to fulfill the Rule 1 mandate of securing "the just, speedy, and inexpensive determination" of this case.

## V.   CONCLUSION

For the reasons set forth above, the Court orders as follows

- Defendant's motion seeking permission to serve document subpoenas on The Cadle Co., Inc. and The Cadle Co. II, Inc. is GRANTED IN PART AND DENIED IN PART;

- Defendant's motion seeking permission to serve deposition subpoenas on The Cadle Co., Inc. and The Cadle Co. II, Inc. is DENIED WITHOUT PREJUDICE;

- Defendant's motion seeking permission to serve additional documents and deposition subpoenas is DENIED WITH PREJUDICE;

- Plaintiff's apparent motion seeking reconsideration of Judge Tomlinson's May 29, 2020 decision rejecting Plaintiff's motion to compel regarding Defendant's individual tax returns is DENIED;

- Plaintiff's motion seeking permission to serve a document subpoena on Alan Grossman is DENIED WITH PREJUDICE;

- Plaintiff's motion seeking permission to serve a deposition subpoena on Alan Grossman is DENIED WITHOUT PREJUDICE;

- Plaintiff's motion seeking permission to serve a document subpoena on Soni Capital Resources, LLC is DENIED WITH PREJUDICE; and

- Plaintiff's motion seeking permission to serve a deposition on Soni Capital Resources, LLC is HELD IN ABEYANCE pending further submission from Plaintiff due January 13, 2023.

**SO ORDERED:**

Dated:   Central Islip, New York
         December 19, 2022

s/ Lee G. Dunst
_____

**LEE G. DUNST**
United States Magistrate Judge

27