UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW FALLS CORPORATION,<br><br>                           Plaintiff,<br><br>              v.<br><br>OM P. SONI,<br><br>                           Defendant. | **MEMORANDUM & ORDER**<br>16-CV-06805 (HG) (LGD) |

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff New Falls Corporation brings suit against Defendant Om P. Soni as guarantor of a debt assigned to Plaintiff. After years of litigation in multiple actions and districts, the parties now seek relief through cross-motions for summary judgment on the important but narrow issues of Plaintiff's Article III standing and Plaintiff's standing to enforce payment on the debt. Because Plaintiff satisfies the tests relevant to each standing inquiry, the Court grants Plaintiff's motion for partial summary judgment and denies Defendant's motion for partial summary judgment, as described in greater detail herein.

## FACTUAL BACKGROUND

Writing in May 2020, Magistrate Judge Tomlinson observed that "[d]espite the straightforward nature of the singular claim raised in this action, this case has dragged on for nearly four years." *See New Falls Corp. v. Soni*, No. 16-cv-6805, 2020 WL 2836787, at *1 (E.D.N.Y. May 29, 2020). Nearly four more years have now passed, and according to the parties, little has changed. As such, it is appropriate to borrow from Magistrate Judge Tomlinson, who wrote at the time that this action

> arises from the nonpayment of a promissory note executed on May 14, 2007 by non-party Soni Holdings, LLC ("Soni Holdings") to Plaintiff's predecessor-in-interest, AmSouth Bank [which later became Regions Bank], for a business loan

   in the amount of $310,216.50 (the "Note").  This action alleges that Defendant Om P. Soni ("Defendant" or "Soni") executed a Guaranty Agreement (the "Guaranty") contemporaneous with the execution of the Note, through which he personally guaranteed the obligations under the Note.  Plaintiff seeks to recover the principal sum of $204,559.72, along with interest allegedly owed by Defendant Soni under the Guaranty.

*Id.*[1]  As discussed further below, and as evidenced by their disharmonious Rule 56.1 statements, the parties disagree sharply about numerous issues, including, as is most relevant here, the ownership of the Note.  *See* 247-13 (Plaintiff's Statement of Material Facts); 248-4 (Defendant's Counterstatement); ECF No. 249-12 (Defendant's Statement of Material Facts and Plaintiff's Counterstatement).  The parties have each moved for partial summary judgment.  *See* ECF No. 247-14 (Plaintiff's Memorandum of Law); ECF No. 248-1 (Defendant's Memorandum of Law); ECF No. 249-13 (Plaintiff's Memorandum of Law in Opposition); ECF No. 250 (Plaintiff's Memorandum of Law in Opposition).

## **LEGAL STANDARD**

  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A genuine factual dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Truitt v. Salisbury Bank &*

---

[1]  Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes.

2

*Tr. Co.*, 52 F.4th 80, 85 (2d Cir. 2022) (quoting *Anderson*, 477 U.S. at 258). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).

## DISCUSSION

Although this should have been a simple case, the parties advance a torrent of arguments, many presented confusingly and in violation of the Court's rules. It is therefore important at the threshold to identify the relief sought by each party. Plaintiff moves for partial summary judgment "determining that Plaintiff is owner and holder of the [Note] and striking Defendant's affirmative defense of lack of standing." ECF 247-14 at 5.[2] Without using the word "standing," Defendant pleaded the following as an "affirmative defense": "[P]laintiff is not a holder in due course or [P]lainitff paid any consideration for the alleged [N]ote and/or guarantee." ECF No. 6 ¶ 21 (Defendant's Answer).[3]

Plaintiff views its requested relief as two sides of the same coin, but that is a mistake because a "holder in due course" is a specific type of "holder" of a promissory note. *See Green Tree Servicing LLC v. Christodoulakis*, 136 F. Supp. 3d 415, 429 (E.D.N.Y. 2015) ("holder in due course" status not necessary to enforce payment on a note); *see also* N.Y. U.C.C. § 1-

---

2    The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

3    The Court understands that Defendant intended for the "not" to negate both clauses—*i.e.*, Plaintiff is not a holder in due course of the Note and Plaintiff did not pay consideration for the Note.

3

201(21) (defining "holder"); *id.* § 3-302 (criteria for being a "holder in due course"). Plaintiff's specific request for relief is narrow. *See* ECF No. 247-14 at 6 ("The instant motion is solely concerned with Defendant's lack of standing claim . . . ."). For his part, Defendant raises arguments relevant both to Plaintiff's status as a holder and as a holder in due course. *See* ECF No. 248-1 at 29; ECF No. 250 at 29. In sum, the parties have joined issue only as to Plaintiff's status as a holder and its standing to enforce the Note, *see Green Tree*, 136 F. Supp. 3d at 428, and not as to the holder in due course issue. Further, Defendant does not move for summary judgment with respect to its "holder in due course" defense; indeed, he, too, seeks summary judgment as to "Plaintiff's lack of standing" more generally, ECF No. 248 at 1 (Notice of Motion), on which holder in due course status does not hinge. *See Green Tree*, 136 F. Supp. 3d at 429. Accordingly, the Court understands the parties to cross-move with respect to Plaintiff's standing to enforce the Note. Given the parties' apparent confusion about the nature of Defendant's defense, the Court will go no further, including with respect to any defense based on Plaintiff's potential status as a holder in due course.[4]

In his papers, Defendant also raises the distinct issue of Article III standing. *See, e.g.*, ECF No. 248-1 at 17–18; ECF No. 250 at 30–32. Because a litigant may raise Article III standing, which implicates the Court's subject-matter jurisdiction, at any time, *see Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016), the Court also construes Defendant's motion as seeking partial summary judgment as to Plaintiff's Article III standing.

---

[4] Plaintiff's motion is narrow in another way, too, in that it does not seek summary judgment as to recovery on the Note, just as to its standing to enforce payment thereon. *See Green Tree*, 136 F. Supp. 3d at 426–27. Accordingly, it will be for the jury to decide whether Plaintiff has satisfied its burden with respect to the other elements needed to recover, including, for example, that the Note is in default. *See id.* at 427.

4

I.      New York Law Controls This Breach of Contract Action

Before reaching the standing question, the Court must first determine the applicable law. In resolving this dispute, the Court will apply New York law. To be sure, the Note provides that it should be construed in accordance with Alabama and federal law. ECF No. 247-4 at 3 (the at-issue Note). Nevertheless, Plaintiff claims that New York law applies because the parties, in voluntarily dismissing a related state court action in 2016, stipulated that "any further litigation between [Defendant] and [Plaintiff] regarding the . . . Note and Guaranty shall be in State and/or Federal Court with jurisdiction over Nassau County, New York and the laws of . . . New York shall apply." ECF No. 249-13 at 18; ECF No. 21-2 ¶ 4 (Stipulation of Dismissal). In opposition, Defendant claims that federal and Alabama law control this action because the Asset Sale Agreement, a different agreement between Regions and a non-party, the Cadle Company II, Inc., whom Defendant contends was assigned the Note, provides as much. *See* ECF No. 248-1 at 22; ECF No. 248-5 at 15 (Regions-Cadle Asset Sale Agreement).

Here, Plaintiff's argument prevails. First, Plaintiff is right to observe that Defendant explicitly consented to the application of a substantive law different from that provided for by the Note and the Regions-Cadle Asset Sale Agreement. "A party may consent to the application of a particular jurisdiction's law, before a dispute arises or post-dispute during the course of litigation, either explicitly or implicitly, and that consent 'is sufficient to establish choice of law.'" *See Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308, 325 (S.D.N.Y. 2007) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)). Defendant also misses the mark by referring to the Regions-Cadle Asset Sale Agreement, a contract to which Plaintiff never consented. *See* ECF No. 248-1 at 7. Second, applying New York choice of law rules, neither party even hints that there is a conflict between New York and Alabama law on the question of the assignment of the Note, and the Court's own research indicates that there is no

5

actual conflict. *See Pascarella v. Sandals Resorts Int'l, Ltd.*, No. 19-cv-2543, 2020 WL 1048943, at *5 (S.D.N.Y. Mar. 4, 2020). Indeed, Defendant agrees when he claims that "the result regarding [Plaintiff's] lack of standing would be the same under either New York or federal law if either were applicable." ECF No. 250 at 30 (emphasis and capitalization omitted). Therefore, the Court applies New York law in this case.

## II. Plaintiff Has Article III Standing

Both parties claim that the instant motions involve an issue of "standing." *See, e.g.*, ECF No. 247-14 at 5; ECF No. 248-1 at 17–18. Defendant vigorously and repeatedly argues that Plaintiff lacks Article III or constitutional standing necessary to invoke this Court's subject-matter jurisdiction. *See, e.g.*, ECF No. 248-1 at 17–18; ECF No. 250 at 12. He argues that because Plaintiff does not own the Note, it lacks Article III standing. *See* ECF No. 248-1 at 17–18. Plaintiff disagrees, but rather than invoking the test for standing under Article III, treats the issue of Note ownership as coextensive with a generalized "standing" inquiry. *See* ECF No. 247-14 at 10. The parties are arguing past one another. The source of their confusion, which lies primarily with Defendant, can be found in the difference between Article III standing, as needed to invoke the Court's subject-matter jurisdiction, and prudential standing, which is a limitation on the Court's exercise of jurisdiction that "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *See Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014).

The Court easily concludes that Plaintiff satisfies Article III's standing requirements, and Defendant's summary judgment motion as to constitutional standing must be denied. "In response to a summary judgment motion . . . the plaintiff . . . must set forth by affidavit or other evidence specific facts, which for the purposes of the summary judgment motion will be taken to be true." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Nat. Res. Def. Council, Inc. v.*

6

*FDA*, 710 F.3d 71, 84 (2d Cir. 2013).  To establish Article III standing, "a plaintiff must show (i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  "Contractual standing," or "whether a party has the right to enforce a contract," "is distinct from Article III standing and does not implicate subject-matter jurisdiction."  *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020); *see also U.S. Bank Nat'l Ass'n v. KeyBank, Nat'l Ass'n*, No. 20-cv-3577, 2023 WL 2745210, at *16 & n.13 (S.D.N.Y. Mar. 31, 2023) (citing *Google* and explaining that "[c]ontractual standing is a prudential limitation on the Court" which goes to the merits).

That distinction is essential.  To be sure, where a party does not allege that ownership was transferred to it and, for example, alleges only that it has a power of attorney, Article III standing is lacking.  *See Cortlandt Street Recovery Corp. v. Hellas Commc'ns S.a.r.l.*, 790 F.3d 411, 418–20 (2d Cir. 2015).  But that is not the case here.  "Although the question of whether [Defendant] breached a contract with [Plaintiff] depends on whether [Plaintiff] enjoyed a contractual relationship with [Defendant], the existence of such a relationship is not a prerequisite to a court's power to adjudicate a breach-of-contract claim."  *See Google*, 963 F.3d at 211.  Thus, Defendant errs by "collaps[ing] the standing inquiry into the merits."  *Id.* at 212.

In this posture, Defendant has failed to show that there exists no genuine dispute of material fact as to Plaintiff's alleged lack of constitutional standing.  Much to the contrary, Plaintiff satisfies the test for Article III standing at this stage.  Through a simple showing, Plaintiff has established a concrete, particularized, and actual injury, and that such injury was likely caused by Defendant.  *TransUnion*, 594 U.S. at 423.  Specifically, Plaintiff's president has

submitted an affidavit which states that Soni Holdings defaulted on the Note and Defendant failed to make payments after default, ECF No. 247-3 ¶¶ 8–11 (Barta Affidavit), and the Guaranty Agreement identifies Defendant as the Note's guarantor, ECF No. 247-5 at 2 (Guaranty Agreement). *See TransUnion*, 594 U.S. at 425 ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."). In addition, that injury can be redressed by an award of money damages. *See Google*, 963 F.3d at 211. Accordingly, to the extent Defendant seeks summary judgment as to Plaintiff's purported lack of Article III standing, the motion is denied. *See In re Montagne*, 421 B.R. 65, 75 (Bankr. D. Vt. 2009) (party had constitutional standing where it asserted injury, in the form of debtor's default, which was "likely to be redressed by a favorable ruling allowing it to enforce the Note").[5]

### III. Plaintiff Is Entitled to Summary Judgment Because There Is No Genuine Dispute of Material Fact That It Has Prudential Standing

On the issue of prudential standing, a plaintiff "has standing to enforce payment of a note so long as it was a holder of the note when the action was commenced." *See Green Tree*, 136 F. Supp. 3d at 428.[6] "[A] written assignment of the underlying note" is sufficient to establish

---

[5] In his Rule 56.1 Counterstatement, Defendant also theorizes about another potential jurisdictional defect, suggesting that the amount in controversy fails to exceed $75,000, as required under 28 U.S.C. § 1332. *See* ECF No. 248-4 ¶ 3. Defendant, citing only his own Answer, claims that "the alleged purchase price of the [Note] was only 32.124100% of approximately $204,000.00." *See id.* He fails to provide any explanation as to why Plaintiff's recovery would be limited to the amount it paid for the Note. Because Plaintiff owns a note entitling it to receive an amount well clear of $75,000, the amount-in-controversy requirement is met. *See, e.g.*, *RL 900 Park, LLC v. Ender*, No. 18-cv-12121, 2021 WL 738705, at *6 (S.D.N.Y. Feb. 25, 2021) (amount in controversy is "the full outstanding principal value of the Mortgage").

[6] Plaintiff claims that a prior judgment from that United States District Court for the Northern District of Alabama, No. 17-cv-1330, resolves the question of standing under the principles of either *res judicata* or collateral estoppel. ECF No. 247-14 at 10–11. In that case, the district court entered a default judgment in favor of Plaintiff against Soni Holdings, LLC, in

holder status. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016). "No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." *Id.* at 223.[7] Plaintiff has produced an agreement, executed in September 2015, in which Regions Bank "transfer[red], assign[ed] and convey[ed] [its] right, title and interest" in the Note to Plaintiff. ECF No. 247-6 at 1 (Regions-New Falls Asset Sale Agreement). The agreement therefore "assigned to [Plaintiff] all of the rights that [Regions] previously had to" the Note, which the Second Circuit has held is sufficient to give Plaintiff standing to enforce the Note. *See OneWest*, 827 F.3d at 223.

Plaintiff also asserts that it has standing because it has physical possession of the Note. ECF No. 247-14 at 7. "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of plaintiff." *Green Tree*, 136 F. Supp. 3d at 428. Plaintiff has therefore demonstrated that it is the "*present* holder of the Note through the submission of documentary evidence and . . . affidavits." *Id.* at 427 (emphasis added). First, Plaintiff has put forward an allonge

---

which Plaintiff sought to enforce an arbitral award concerning payment on the Note. *See* ECF No. 8 (Default Judgment Motion); ECF No. 10 (Default Judgment). Here, the Court would apply the law of the state of the rendering court, Alabama, to determine the preclusive effect of the default judgment. *See In re Tyson*, 511 F. App'x 120, 122 (2d Cir. 2013). Application of *res judicata* requires "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *See Lee L. Saad Constr. Co. v. DPF Architects, P.C.*, 851 So.2d 507, 517 (Ala. 2002). And Alabama law does not allow for the application of collateral estoppel to default judgments. *See Malfatti v. Bank of America*, 99 So.3d 1221, 1225 (Ala. 2012). The Court cannot determine, based on Plaintiff's meager treatment of the issue and the thin record currently before it, whether *res judicata* or collateral estoppel applies in this offensive posture, and cannot grant summary judgment on that basis.

7   Because this rule is materially the same under Alabama law, the Court would have reached the same outcome with respect to standing even had it proceeded thereunder. *See Atkins v. GE Cap. Mortg. Servs., Inc.*, 993 F. Supp. 1406, 1415 (M.D. Ala. 1998); *LPP Mortg., Ltd. v. Boutwell*, 36 So.3d 497, 501 (Ala. 2009).

assigning the Note to it. *See* ECF No. 247-4 at 5; *Wells Fargo Bank v. Nasr*, No. 19-cv-47, 2019 WL 2074566, at *5 (S.D.N.Y. May 10, 2019) (reviewing allonge assigning payment of loan and finding it sufficient to establish holder status). Affidavits from Mr. Barta, *see* ECF No. 247-3 ¶ 4, and Wade Parker, vice-president of Regions Bank, *see* ECF No. 247-2 ¶ 3 (Parker Affidavit), confirm that the "[a]llonge" was "permanently affixed to the Note" as required by New York Uniform Commercial Code Section 3-202(2). *See Courchevel 1850 LLC v. Alam*, No. 17-cv-785, 2019 WL 9656366, at *11 (E.D.N.Y. Oct. 30, 2019) (finding U.C.C. Section 3-202(2) requirements met based in part on affidavit), *report and recommendation adopted*, 464 F. Supp. 3d 475 (E.D.N.Y. 2020). However, current physical possession alone is insufficient to establish standing. Mr. Barta has submitted an affidavit indicating that the Note was "transferred" to Plaintiff at the time of assignment in September 2015 (which Mr. Parker also confirms, *see* ECF No. 247-2 ¶ 3), and Plaintiff had physical possession of it at the time Mr. Barta swore to his affidavit in August 2023, *see* ECF No. 247-3 ¶ 3–4, but both the Barta and Parker Affidavits are silent as to when Plaintiff physically acquired the Note. As such, Plaintiff has not demonstrated that it was in "physical possession of [the] original Note at the time it commenced its lawsuit." *See OneWest*, 827 F.3d at 217; *accord E. Savings Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015).[8] Therefore, the Court cannot grant summary judgment to Plaintiff on this secondary, alternative basis for establishing standing.

To attempt to raise an issue of material fact, Defendant has one argument: the assignment from Regions to Plaintiff was invalid because Regions had already sold the Note to a

---

[8] New York law does not require Plaintiff to provide detail about exactly when and how it received the Note. *See OneWest*, 827 F.3d at 222–23 (citing *Aurora Loan Servs., LLC v. Taylor*, 34 N.E.3d 363 (2015)). But it is still required to "adequately prove that it did . . . have possession of the [N]ote prior to commencement of this action." *Aurora*, 34 N.E.3d at 366.

10

different company affiliated with Mr. Barta, the Cadle Company II, Inc., by the time it purportedly assigned the Note to Plaintiff. ECF No. 248-1 at 6–7. Defendant cites to New York authority for the uncontroversial proposition that a party needs standing to enforce payment on a note, and that failure to properly pass title will defeat standing. *See, e.g.*, *Bank of New York v. Silverberg*, 926 N.Y.S.2d 274, 282 (N.Y. App. Div. 2011). Unfortunately for Defendant, the facts of his case find no home in that body of law. Defendant points to the executed Regions-Cadle Asset Sale Agreement, which predates the assignment to Plaintiff, in which Regions committed to sell certain loans, including the Note, to Cadle. *See* ECF No. 248-5.

Plaintiff retorts that the Regions-Cadle Asset Sale Agreement was just a "preliminary agreement" which was "never consummated" and that, ultimately, the only sale agreement was between Regions and Plaintiff. *See* ECF No. 249-12 at 4.[9] Plaintiff provides extensive support for that position. First, the Note itself contains an allonge assigning the Note to Plaintiff. *See* ECF No. 247-4 at 5. Mr. Barta, who is both Plaintiff's president and Cadle's vice-president, has submitted an affidavit that the Regions-Cadle Asset Sale Agreement was only preliminary, the sale from Regions to Cadle never took place, and Cadle never paid for the pool of loans, including the Note, subject to the Regions-Cadle Asset Sale Agreement. *See* ECF No. 247-3 ¶¶ 12–15. Second, Mr. Parker has submitted an affidavit indicating that the Note was assigned to Plaintiff and that Plaintiff paid for the Note. *See* ECF No. 247-2 ¶ 7. Third, Plaintiff has

---

[9] Defendant relies extensively on *Ex parte A.B./Wildwood Ltd. Partnership*, 793 So.2d 784 (Ala. 2000), in which the Alabama Supreme Court explained in *dicta* that an agreement to sell real estate provided the would-be buyer with an equitable ownership claim, and the would-be sellers violated that equitable interest by purporting to convey the property to another party. *Id.* at 789. Contrary to Defendant's claim, that situation is not "analogous" to his own. *See* ECF No. 250 at 18. Here, Defendant, as a third-party, ironically seeks to enforce the rights only he believes that the parties to the Regions-Cadle Asset Sale Agreement have. As the evidence discussed herein shows, neither of those parties ever claimed to have, nor acted as if they ever had, an enforceable agreement to assign the Note to Cadle. Defendant's claim is conjecture.

11

produced another executed agreement, the Regions-New Falls Asset Sale Agreement, providing for the sale of the Note to Plaintiff. *See* ECF No. 247-6. Fourth, Plaintiff has produced a September 2015 letter from Regions addressed to Soni Holdings in which the bank informed the debtor that the Note had been sold to Plaintiff. *See* ECF No. 247-7. Fifth, Plaintiff has produced a closing statement from Regions evidencing sale of the Note to Plaintiff. *See* ECF No. 247-11 (Closing Statement).

Defendant has no effective response to this mountain of evidence. Instead, it resorts to making claims that range from meritless to fantastical, seeking to depict an alternate reality in which the Court considers the Regions-Cadle Asset Sale Agreement in a complete vacuum. First, Defendant claims that Regions produced *only* the Regions-Cadle Asset Sale Agreement. ECF No. 248-1 at 7. That claim says nothing about the actual sale of the Note and once again "completely ignore[s] the existence of the [a]llonge." *See New Falls Corp. v. Soni Holdings, LLC*, No. 19-cv-0449, 2020 WL 9211146, at *6 (E.D.N.Y. Sept. 30, 2020), *report and recommendation adopted*, 2021 WL 855939 (E.D.N.Y. Mar. 5, 2021).[10] Second, Defendant repeatedly contends that Cadle did not assign the Note to Plaintiff. *See* ECF No. 248-1 at 21. That argument does nothing to undermine the evidence showing that Regions assigned the Note to Plaintiff.

---

[10] Defendant doubles down on this faulty reasoning when he argues that "[Mr.] Parker's email to Regions' own Legal Dept. supports the fact that the [Regions-Cadle Asset Sale Agreement] not only governs but it is the only agreement for the [Note] [and] was not 'Preliminary' and was not 'unconsummated.'" ECF No. 250 at 21. But that conclusion is in no way supported by Defendant's citation to an incomplete email chain suggesting that a Regions representative told Defendant's counsel that Mr. Parker said the Regions-Cadle Asset Sale Agreement was "signed." ECF No. 250-3 at 5. Nor does it raise a genuine issue of material fact, as explained further below.

Third, Defendant attacks the weight of certain pieces of Plaintiff's evidence. Defendant contends that the Parker Affidavit is, among other things, "stale" and "self-serving," and further posits that Mr. Parker lacks authority to speak for Regions. ECF No. 250 at 20. Defendant cites no law to support his position, and the Court finds no defect that would preclude it from considering the relevant portions of the Parker Affidavit on summary judgment. Defendant also contends that the Barta Affidavit is a "sham" because it contradicts his deposition testimony in that Mr. Barta testified that Cadle may have paid an initial deposit for the Note and other loans pursuant to the Regions-Cadle Asset Sale Agreement. ECF No. 250 at 21 (citing ECF No. 248-9 (Barta Dep. Tr.)). But Defendant ignores that in the very same deposition, Mr. Barta testified that Plaintiff ultimately bought the Note. *See* ECF No. 248-9 at 5:19–20. Along the same lines, Defendant claims that Plaintiff has not produced proof of payment for the Note, which Defendant asserts Plaintiff consciously chose not to produce because it would "risk[] a ruling that [Cadle] is the true owner." ECF No. 250 at 22. That speculative hunch is foreclosed by, in addition to the evidence already discussed, Plaintiff's production of a closing statement showing Plaintiff as the buyer. *See* ECF No. 247-11. To the extent Defendant contends that the Court should disregard the Barta Affidavit because Mr. Barta is "an interested, conflicted party," ECF No. 250 at 22, Defendant again identifies no legal basis for such relief.

Although Defendant spills much ink trying to generate an issue of material fact, his effort is unavailing. A dispute is only "genuine" "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *See Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."). It is well-established that naked efforts to stir up

13

doubt without any basis in the evidentiary record are insufficient. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."). Defendant also repeatedly asks the Court to "weigh the evidence, . . . assess the credibility of witnesses, [and] resolve issues of fact"—precisely what the Court is prohibited from doing at this juncture. *See id.* Defendant attempts to find a genuine issue of material fact in an alternate reality in which multiple players have conspired to conceal and misrepresent the nature of the Regions-Cadle Asset Sale Agreement, including, for instance, through the fabrication of documents to the Court,[11] despite the evidence that Regions ultimately sold the Note to Plaintiff. That effort is fatally misguided. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (party resisting summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts"); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("At the summary judgement stage, a nonmoving party must offer some hard evidence showing that its version of events is not wholly fanciful."). Taken as a whole, the record could not lead a jury to find that Plaintiff lacks standing to enforce payment on the Note. *See Matsushita*, 475 U.S. at 587. Accordingly, Plaintiff's motion for summary judgment as to its standing is granted, and Defendant's cross-motion for summary judgment as to Plaintiff's lack of standing is denied.

## CONCLUSION

For the reasons explained herein, Defendant's motion for partial summary judgment with respect to Plaintiff's Article III standing is DENIED. Plaintiff's motion for partial summary

---

[11] For instance, Defendant attacks the Regions-New Falls Asset Sale Agreement on the basis that that signatures are on different pages, claiming that Plaintiff created it as a "**bogus and/or fraudulent document**" in response to the "uncover[ing]" of the Regions-Cadle Asset Sale Agreement. ECF No. 250 at 23 (emphasis in original). After eight years of litigation, Defendant has come up with zero evidence to support that bold claim.

judgment with respect to its standing to enforce payment on the Note is GRANTED, and Defendant's cross-motion concerning the same is DENIED. The parties are directed to submit their joint pre-trial order in accordance with Section VI.B of the Court's Individual Practices by April 26, 2024.

       SO ORDERED.

                                        */s/ Hector Gonzalez*
                                        HECTOR GONZALEZ
                                        United States District Judge

Dated: Brooklyn, New York
           March 22, 2024